L. C. SHARP, APPELLANT, v. NATIONAL FIDELITY & CASUALTY COMPANY ET AL., APPELLEES.

GEORGE J. S. COLLINS, APPELLEE, v. L. C. SHARP, APPELLANT.

FILED OCTOBER 16, 1914.   No. 17,814.

1. **Contracts:** BUILDING CONTRACTS: CONSTRUCTION. The building contract involved in this controversy considered, and *held* to be a contract by the defendant Collins to ''order all the material, and superintend all the work for the building,'' and not to be an ordinary building contract.

2. ———: ———: ACTION FOR DAMAGES: SUFFICIENCY OF EVIDENCE. Evidence set forth in the opinion *held* to justify the finding of the district court that the principal delays in the construction of the building and sidewalk were due to acts of the owner, and that he is not entitled to recover damages from the contractor therefor.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Judgment modified.*

*P. A. Wells,* for appellant.

*Stout, Rose & Wells, B. N. Robertson* and *Alvin F. Johnson, contra.*

LETTON, J.

This action was brought against the defendant Collins for failure to fully perform a contract to erect a building, and against the National Fidelity & Casualty Company upon the bond given to secure the faithful performance of the contract. The petition charges that the cost of the building exceeded the amount stipulated, that the building was not completed at the time stipulated, and claims damages for loss of rents, loss of profits in the business which Sharp expected to carry on in the building, and for defective construction. Collins admitted the execution of the contract and bond, denied the other allegations of the petition, and counterclaimed that there was due him for extras on the contract $1,729, with interest. Collins afterward brought an action against Sharp to foreclose a mechanic's lien for labor performed and material furnished in the erection of the building. A number of subcontractors and materialmen were parties to this suit and filed cross-petitions praying for foreclosure of their liens. By consent the latter action was consolidated with the first for the purpose of trial. A jury was waived and the case tried to the court, which found in favor of Collins, dismissed Sharp's petition in the law action, and rendered a judgment in favor of Collins for $1,809. In the equity suit it ordered the foreclosure of Collins mechanic's lien for $1,739 of this amount, and established and foreclosed the liens of the other defendants. Sharp has appealed in both actions.

The facts seem to be that, some time previous to the meeting of Sharp and Collins, Sharp had procured from Fisher & Lawrie, architects, plans and specifications for a brick machine-shop building. Collins was not called upon until it was found that bids could not be procured for the construction of the building, as specified, for the amount of money which Sharp desired to expend. These plans and specifications were gone over by Collins and

changed in a number of material particulars, and certain blue-print plans differing in some respects from those submitted by Fisher & Lawrie were made by Collins and submitted to Sharp before the contract was finally entered into. In drawing up the contract between the parties the ordinary printed form of builder's contract was used, but a number of the printed paragraphs were erased as not applicable to the actual understanding. By article 1 it was provided: "The contractor shall and will provide all the materials and perform all the work" for the building "as shown on the drawings and described in the specifications prepared by Fisher & Lawrie and George J. S. Collins." It was provided in article 6: "The contractor shall complete the several portions, and the whole work comprehended in this agreement, by and at the time or times hereinbefore stated, to wit, as soon as practicable, say November 1st, 1909." Article 8: "The owner agrees to pay for all labor and materials essential to the conduct of this work." Article 9: "It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work shall be $800. * * * Should the total cost of the building, as specified in article 13, be less than $8,200, the contractor shall be entitled to 25 per cent. of such saving, but shall pay all cost in excess of that amount, subject to additions and deductions as hereinbefore provided." By article 13 the contractor agreed to furnish a bond "that the cost of all materials and labor for the building, exclusive of the sum mentioned above, shall not exceed $8,200." The Casualty Company bond recited: "Whereas said principal has entered into a written article of agreement dated the 31st day of July, 1909, with said owner to order all the materials and superintend all the work for (describing the building). But the owner shall pay for all labor and material; said building to be constructed in accordance with the plans and specifications signed by the parties hereto."

There is a direct conflict in the evidence with respect to the identity of the specifications which formed part of the contract. Sharp produced the specifications prepared

by Fisher & Lawrie. These bear the genuine signatures of Collins and Sharp, which Sharp testifies were signed at the time the contract was entered into. Collins testifies, on the other hand, that no specifications were signed at that time, but claimed that the changed specifications were delivered to Sharp, and have never since been seen by him; that the specifications produced were signed nearly five months after the contract was signed, Sharp having produced them and stated that this was the copy which had been altered; and that he (Collins) signed them without examination. Collins keeps a diary in which he notes many facts with respect to his business. By reference to the diary he testified that this occurred on January 24, 1910, and that he only discovered that he had signed the wrong specifications on January 28, 1910, after he was told that Sharp had taken the specifications away. Whether this is the fact or not, it seems apparent that the signed specifications were not adhered to in the construction of the building, because in a number of important points neither the Fisher & Lawrie plans nor these specifications were followed. Moreover, many of the provisions of these specifications are not at all applicable to a contract of the nature of that actually entered into between these parties. Even if these actually are the specifications that were identified before using and which were used, it is evident that neither party treated many of their provisions as effective, and that Sharp is not entitled to insist upon their strict interpretation now. This being so, a large part of the complaint with respect to a departure from the specifications must fail.

The evidence also conflicts as to the time that the contract was signed. This is only material with respect to the time of completion, and, incidentally, as throwing light upon the actual understanding of the parties. The duplicate contracts bear date of August 31, 1909. Upon the back of the copy which Collins retained that date is also shown. The bond recites that the contract was dated July 31. The bond itself is dated August 7, 1909. Collins testified by the aid of his diary that he presented the drawings,

as changed by him, to Sharp on August 10, that negotiations continued until the 20th, but the contract was not actually signed until August 31. The agent for the insurance company testifies that at the time the bond was applied for it was his recollection that Collins had a copy of the contract. Upon cross-examination, however, it developed that in the copy of the agreement which was then furnished to the insurance company, which was produced at the trial and from which the provisions in the bond were drawn, the date is July 31, and the printed clause, "the contractor shall and will *provide* all the materials and *perform* all the work," had been so changed that it read, "that the contractor shall and will *order* all the material and *superintend* all the work for the building." In a few minor particulars, also, this contract differed from the actual contract which was signed. We are satisfied that the contracts which were actually signed were not executed until the day they bear date, and that this copy and the recital in the bond more nearly express the actual contract between the parties, as afterwards construed by the action of the parties themselves, than does the written contract, and that by an oversight the printed forms were not changed accordingly when the contracts were afterwards signed.

We are also of opinion that the clause, "as soon as practicable, say November 1st," should be taken to mean as soon as practicable, all things considered, and as near November 1st as can reasonably be expected, and that the fact that the contract was not signed until August 31 is of much weight in determining whether the building was completed within a reasonable time and whether the freezing of the concrete was due entirely to the fault of Collins. We cannot detail the evidence with respect to the causes for delay. It appears that the delay in the erection of the superstructure was largely owing to the fact that Sharp desired to order the steel from a Chicago dealer in second-hand material, and that through a mistake in the shipment the steel for the second floor did not arrive until November 1. That he interfered in this respect is denied by

Sharp; but, in any event, considerable delay was occasioned by the mistake of the Chicago concern. The delay in the construction of the sidewalk also seems to have been caused by a change with respect to glass to be imbedded in the concrete to light the area below. As to this, we think it clear that Sharp directed Collins to order this particular kind of glass. When the glass came it did not fit the metal frames in which it was to be placed, and this occasioned another delay, so that freezing weather came on before the concrete could be placed, and artificial heat was used in the attempt to preserve the work. There is no doubt that the sidewalk concrete work is not equal to what it should be, or what it would have been if it had been laid in warmer weather. We think the fault was not with Collins in either of these matters.

By the terms of the contract any delay occasioned by the act of Sharp operated to extend the time for completion to the extent of the time lost by the delay. Much of plaintiff's claim for damages is for loss of rents, for loss of use of that portion of the building intended to be occupied by his own business, and for loss of profits occasioned by his inability to fill orders for machinery on account of being unable to occupy the building. The latter item charged we think is too remote and speculative. It was not specially called to the attention of Collins at the time the contract was entered into, and could not reasonably have been anticipated within the contemplation of the parties when the contract was made. Under the rule in *Hadley v. Baxendale,* 9 Welsb. H. & G. (Eng.) *341, it is not a proper element of damages. As to the other items, we are of opinion that the delay was largely, if not altogether, occasioned by Sharp himself, and that he is not entitled to recover any damages for loss of rent and loss of use.

Items which Collins claims as extras, 53 in number, are set forth in detail in the pleadings, and evidence offered in support by him. The district court made specific findings upon each of these items, allowing some in full, reducing the amount of others, and finding in favor of Sharp as to others. The evidence as to many of these items is in

direct conflict. A discussion of the evidence as to each is impracticable within the proper limits of this opinion. It is sufficient to say that, considering the evidence upon the whole list, and also with regard to the extra compensation claimed by Collins, we have come to the conclusion that the amount awarded Collins should be reduced to the extent of $249.22. While Sharp is not justified in many of his contentions, he had reasonable cause for complaint in a number of respects, and the compensation to be awarded Collins should therefore be reduced in some degree.

We cannot refrain from saying that in our opinion the parties were most unbusinesslike and indefinite in entering into the contract and in their dealings afterwards, and that if either of them has not obtained full justice in this matter it is largely owing to his own careless methods.

The judgment of the district court awarding Collins a mechanic's lien is therefore reduced $249.22, with interest from the time allowed by the district court, and also the general judgment. It is further ordered that the costs in this court be equally divided between the parties.

JUDGMENT MODIFIED.

ROSE, J., not sitting.